IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **NORMAN L. NICHOLS, JR.** | : | |
| | : | **Civil Action No.** |
| **Plaintiff** | | |
| v. | : | **JFM-02-CV-3523** |
| | : | |
| **CAROLINE COUNTY BOARD** | | |
| **OF EDUCATION** | : | |
| **Defendant** | : | |
| | : : : | |

## AMENDED COMPLAINT AND DEMAND
## FOR JURY TRIAL

Plaintiff Norman L. Nichols, Jr., by his attorney, Frederick P. Charleston, Esq., sues the above defendant as follows:

### NATURE OF CONTROVERSY

1.  This is an action brought pursuant to §706 of the Civil Rights Act of 1964 (as amended 1991), 42 U.S.C.§2000e-5, ("Title VII"), 42 U.S.C §1983, and the First Amendment to the United States Constitution, to redress grievances which Plaintiff has against the above Defendant for actions made unlawful by the above statutes and constitutional provisions.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction of this matter under 28 U.S.C.§§1331 and 1343 (a)(3) and (4) as well as 42 U.S.C.§2000e-5 (Title VII of the Civil Rights Act of 1964 (as amended 1991).

## **PARTIES**

3. Norman L. Nichols, Jr., (Nichols) is a fifty-nine (59) year old African-American male who resides at 209 Reliance Avenue, in Federalsburg, Maryland. Since September, 1967, he has been a full-time teacher with the Caroline County School Board of Education. At all times relevant herein, Mr. Nichols has been a member of the Jehovah Witnesses' religion.

4. Defendant Caroline County Board of Education (Board) is an employer as defined as such in 42 U.S. C. §2000e (as amended 1972), employing more than 100 employees.

## **FACT COMMON TO ALL COUNTS**

5. Plaintiff has been employed as a full-time teacher with the board since 1967. When hired, he was certified to teach music in grades 7-12. He subsequently received his certificate to be an administrative supervisor in 1980.

6. On a continuing basis throughout Plaintiff's tenure, the Board, through its agents, officers, and employees has engaged in different actions against Plaintiff which, in Plaintiff's opinion, were based upon unlawful considerations of race, sex and/or religion. The first of these instances occurred at the end of the 1968-69 school year when the Principal of Colonel Richardson High School refused to allow Plaintiff to dedicate a song at graduation to a female African-American teacher who had taught at Colonel Richardson for sixteen (16) years and who died during the school year. After initially agreeing to the dedication, the Principal rescinded approval when certain white persons objected purely for racial reasons.

7. Beginning in September, 1998, Plaintiff was required to present a doctor's note for an accumulated sick day taken while other similarly situated employees were not required to do so. On June 21, 1999, as a result of this requirement and other actions taken by Defendant, Plaintiff filed a complaint with the

2

Equal Employment Opportunity Commission ("EEOC") alleging discrimination against him on the basis of his race. After receving a Notice of Right To Sue on or about August 6, 1999, Plaintiff filed a lawsuit in this court against the Board (<u>Nichols v. Board of Education of Caroline County</u>, 123 F. Supp. 2d 320 (D. Md., 2000). On November 28, 2000, the Honorable Alexander Harvey granted the Board's motion for summary judgment, thereby dismissing Plaintiff's claims.

      8.     From time to time during Plaintiff's tenure, the Board would assign teachers to teach classes outside of their certification as well as those within their certifications.

      9.     When teachers who were assigned to handle courses both within and outside their certifications were observed and evaluated, board policy was to primarily observe and evaluate them in their area of certification.

      10.    From his date of employment until about January, 2000, Plaintiff's evaulations based upon classroom observations of his teaching style and content were always satisfactory or above. These included observations in both his non-certified teaching areas and his certified area (music).

      11.    At all relevant time herein, Board of Education policy only required three (3) observations for a person with an advanced certification.

      12.    However, beginning January 5, 2001, about two (2) months after the above-mentioned lawsuit was dismissed, Plaintiff for the first time received two "out of his field of certification" observations in health and nutrition. These two observations were followed by one observation in Plaintiff's field of certification (music). A fourth and final observation was made of the Plaintiff on May 21. 2001in his non-certified area. Thus, for the year, Plaintiff was observed on three (3) occasions out of his field of certification, while being observed on only one occasion in his certified field. Prior to this time, he was primarily observed in his certified area.

13. As a result of his unsatisfactory observations and evaluations, on May 30, 2001, (at the end of the 2000- 2001 school year), Plaintiff was notified that his music certification had been downgraded to "second class"; and was placed on a Professional Improvement Plan ("PIP") effective at the beginning of the 2001-2002 school year . As a result of having his certification downgraded to second class, Plaintiff has been denied an incentive bonus of $2,000 for each year since his certification was downgraded.

14. One of the reasons given Plaintiff for his unsatisfactory evaluation and loss of first-class certification was that he had engaged in a discussion of religion in his classrooms. Plaintiff is aware of no other teacher being rated unsatisfactorily for engaging in similar discussions. Moreover, such action against Plaintiff would appear to be in contravention of the Maryland Annotated Code and the Board's own handbook For Teachers and Administrators.

15. Plaintiff began the 2001-2002 school year on probation/PIP and taught thoughout that year on that status. During this period, the Board used the PIP to observe Plaintiff for a total of eight (8) times, more than the required number.

16. As a result of the negative evaluations received by Plaintiff, he was notified by Larry Lorton, PhD., the Superintendent of Schools, that he intended to recommend to the Board that Plaintiff be terminated effective May 3, 2002. Subsequently,on May 8, 2002, Dr. Lorton in fact recommended the termination of Plaintiff's employment. The letter of recommendation indicated inter alia, that Plaintiff was being terminated for incompetency, neglect of duty and/or insubordination. One of the terms of the PIP which Plaintiff allegedly violated was an admonishment to "Refrain from discussion of topics that have religious overtones." Again, no other similarly situated teacher was under such a restraint. Plaintiff immediately filed an administrative appeal of the decision to terminate.

17.  Thereafter, Plaintiff filed a complaint with the EEOC on or about June 21, 2002, alleging discrimination based upon race, color, sex, religion and retaliation with respect to terms and conditions of employment and discharge. On July 30, 2002, based upon Plaintiff's request, the EEOC issued a Notice of Right To Sue.

18.  After being off the Board payroll from May, 2002, Plaintiff was placed back in pay status on or about August 26, 2002, pending final resolution of his administrative appeal. However, he has not been allowed to teach during this period, instead being assigned to non-classroom related duties.

19.  As a result of the actions taken against Plaintiff, he has been required to undergo medical diagnosis and treatment for stress and anxiety-related problems, and to utilize medications to deal with that anxiety and stress.

### COUNT I (Title VII)

**(Retaliation and Reprisal - Terms and Conditions of Employment and Discharge)**

20.  Plaintiff incorporates herein the allegations contained in paragraphs 1 through 19 of this complaint.

21.  The actions of the Board in treating Plaintiff different from similarly situated employees (including discharging him) with respect to observations and evaluations; discussing topics with religious overtones; and the placing (and continuing of) Plaintiff on a PIP were taken in retaliation for Plaintiff's earlier complaint and lawsuit against Defendant (which culminated in November, 1999). Such retaliation and/or reprisal violated the prohibitions set forth in 42 U.S.C.§2000e et seq., which prohibits retaliation or reprisal against a person for engaging in activity or conduct protected by Title VII.

WHEREFORE, Plaintiff claims three hundred thousand dollars ($300,000.00) compensatory damages, and three hundred thousand dollars ($300,000.00)

punitive damages from Defendant, back pay, reinstatement, plus reasonable attorney's fees, costs and such other and further relief to which he may be entitled.

### COUNT II

**(TiTle VII - Race Discrimination)**
**(Terms and Conditions of Employment and Discharge)**

22.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 21 of this complaint.

23.     The actions of the Board in treating Plaintiff different (including discharging him) from similarly situated white employees with respect to observations and evaluations; discussing topics with religious overtones; and the placing (and continuing of) Plaintiff on a PIP were based upon his race (African-American) in violation of the prohibitions under Title VII as set forth in 42 U.S.C.§2000e.

WHEREFORE, Plaintiff claims three hundred thousand dollars ($300,000.00) compensatory damages, and three hundred thousand dollars ($300,000.00) punitive damages from Defendant, back pay, reinstatement, plus reasonable attorney's fees, costs and such other and further relief to which he may be entitled.

### COUNT III

**(Title VII - Religious Discrimination)**
**(Terms and Conditions of Employment and Discharge)**

24.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 23 of this complaint.

25.     The actions of the Board in treating Plaintiff different (including discharging him) from similarly situated employees not of the Jehovah Witness faith with respect to observations and evaluations; discussing topics with religious overtones; and the placing (and continuing of) Plaintiff on a PIP were based upon his

religion (Jehovah's Witness) in violation of the prohibitions under Title VII as set forth in 42 U.S.C.§2000e.

WHEREFORE, Plaintiff claims three hundred thousand dollars ($300,000.00) compensatory damages, and three hundred thousand dollars ($300,000.00) punitive damages from Defendant, back pay, reinstatement, plus reasonable attorney's fees, costs and such other and further relief to which he may be entitled.

## COUNT IV

### (Title VII - Sex Discrimination)
### (Terms and Conditions of Employment and Discharge)

26. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 25 of this complaint.

27. The actions of the Board in treating Plaintiff different (including discharging him) from similarly situated male employees with respect to observations and evaluations; discussing topics with religious overtones; and the placing (and continuing of) Plaintiff on a PIP were based upon his sex (male) in violation of the prohibitions under TiTle VII as set forth in 42 U.S.C.§2000e.

WHEREFORE, Plaintiff claims three hundred thousand dollars ($300,000.00) compensatory damages, and three hundred thousand dollars ($300,000.00) punitive damages from Defendant, back pay, reinstatement, plus reasonable attorney's fees, costs and such other and further relief to which he may be entitled.

## COUNT V

### (First Amendment-United States Constitution - Speech and Religious Discrimination)

28. Plaintiff incorporates herein the allegations contained in paragraphs 1 through 27 of this complaint.

29.     Defendant's adverse treatment of Plaintiff (including discharging him) for discussions involving religious overtones in his classrooms violates Plaintiff's rights to freedom of speech and religion as protected by the First Amendment to the Constitution of the United States.

WHEREFORE, Plaintiff claims three hundred thousand dollars ($300,000.00) compensatory damages, and three hundred thousand dollars ($300,000.00) punitive damages from Defendant, back pay, reinstatement, plus reasonable attorney's fees, costs and such other and further relief to which he may be entitled.

Respectfully Submitted,

_____
Frederick P. Charleston, Esq.
Attorney at Law
2530 N. Charles Street, Ste. 201
Baltimore, Maryland  21218
(410)  662-0010
Fed. Ct. Bar  No. 02933

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial of this case.

_____
Frederick P. Charleston, Esq.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _____ day of March, 2003, a copy of the foregoing Amended Complaint was mailed first class, postage prepaid, to Leslie Robert Stellman, Esq., Hodes, Ulman, Pessin & Katz, 901 Dulaney Valley Road, Towson, MD. 21204.

_____
Frederick P. Charleston, Esq.