IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**NORMAN L. NICHOLS, JR.**          :

                                         :          **Civil Action No.**
                                                           **JFM-02-CV-3523**

               **Plaintiff**          :

**v.**          :

                                              :

**CAROLINE COUNTY BOARD
OF EDUCATION**          :

               **Defendant**          :

                                    :          :          :

**PLAINTIFF'S MOTION TO ALTER, AMEND OR RECONSIDER
JUDGMENT OR ORDER**

    Plaintiff, by his attorney, Frederick P. Charleston, Esq., pursuant to F.R.Civ.P. Rule 59(e), and Local Rule 105.11, respectfully requests the Court rescind its order of February 23, 2004, granting Defendant's Motion For Summary Judgment. As grounds therefore, Plaintiff states as follows.

**I.     INTRODUCTION**

    As a general proposition, Plaintiff requests the Court to reconsider and rescind its decision to grant summary judgment for the reason that the Court placed too heavy a burden on Plaintiff at this stage of the litigation to justify his claim. More specifically, the Court required Plaintiff to prove discrimination occurred when Plaintiff's burden at this juncture is to show genuine issues of material fact which may establish discrimination. It's up to the jury to determine if Defendant's actions are in fact based upon unlawful motives, i.e., race, sex, religion, retaliation. In <u>Reeves v. Sanderson Plumbing Prods., Inc</u>., 530 U.S. 133 (2000), the Supreme Court made it clear that the trier of fact is the ultimate determiner of whether or not an employer's false reasons for taking an adverse action are based upon unlawful discrimination. A

1

Plaintiff does not have to prove discrimination to get to the jury, just that the employer's reasons are <u>pretextual or false</u>.

Additionally, the Court made several findings which Plaintiff's believes are inconsistent with the evidence and the law. These will be briefly outlined and discussed below.

## II.  ARGUMENT

### A.  Pre-Charge Allegations

On pages 2-3 0f its Opinion (footnote 1), the Court indicates that Plaintiff's allegations of discrimination occurring before the 1999-2000 school year are time-barred. Plaintiff does not disagree that they are time-barred, but would state that they were not set forth for the purpose of seeking relief. Instead they were provided to establish a backdrop and perspective for Plaintiff's experiences in Defendant's employ.

### B.  Failure to Establish The Second Element of a Prima Facie Case.

On pages 8-9 (and again on page 17) of its Opinion, the Court concludes that the manner in which Plaintiff was observed were "mediate" ("the frequency and the method with which the Board conducted observations of Nichols and the resulting decision to place him on a PIP were all mediate decisions that did not adversely affect the terms, conditions, or benefits of employment."). The Court then goes on to say that "The observations and the PIP were merely intermediate events intended to help evaluate and improve Nichols' performance." As such, the Court concluded, it would not consider these allegations in analyzing Plaintiff's claims.

Plaintiff would urge the Court to reconsider that conclusion for the reason that it is obvious that wrongful observations could certainly be used to create a basis for

2

disciplining Plaintiff, as opposed to "evaluating and improving his performance." Why is the Court siding with the employer as to its motivations for observing Plaintiff different from others, especially at this stage of the proceeding when Plaintiff is to be given the benefit of all doubts? These observations were not simply mediate, in that without them, the Board would not have been able to take the actions against Plaintiff. In essence, they were akin to "condition precedents" as opposed to being some unimportant isolated events with questionable relationships to the ultimate adverse actions taken against Plaintiff.

Moreover, the PIP and the downgrading of Plaintiff's certification were solely based upon these observations and provided the justification for these actions.

Accordingly, Plaintiff requests the Court re-visit the issue of the extraordinary manner in which these observations were conducted, and put them back into the analytical mix and find that because they were wrongful acts, that a jury could find that the subsequent PIP, the downgrading, and the termination were unlawful.

### C. Lack of Showing Similarly Situated Employees

On pages 14-16, the Court found that Plaintiff's efforts to compare himself with Craig Henry and Candy Craft failed because they were employed at different schools with different supervisors, etc. First, Plaintiff would reiterate that under the peculiar circumstances of this case, his comparisons with Henry and Craft are valid.

Second, while Henry and Craft may have had different immediate supervisors, they shared the same superintendent as Plaintiff: Dr. Lorton. And, clearly, Lorton's role was an active as opposed to a passive one. For example, It was Superintendent Lorton who recommended Plaintiff's downgrading to the Board. It was Superintendent Lorton who approved the placing of Plaintiff on a PIP. It was Superintendent Lorton who recommended Plaintiff's termination to the Board. It was Superintendent Lorton who suspended Plaintiff in violation of the rules.

3

The same is true with Earl Jester, the music teacher at Colonel Richardson High School, i.e., Superintendent Lorton had the final active authority with respect to his supervision. (See p. 25 of Plaintiff's Opposition, and Pl. Exh. 19).

On the other hand, Plaintiff also compared himself with John Barrett, the teacher who replaced him as computer literacy teacher. (See pages 24-26 of Plaintiff's Opposition). Barrett was clearly similarly situated (same school, supervisors, etc.) but the Court failed to even mention him in its Opinion. As such, Plaintiff requests that the Court revisit the issue of appropriate comparisons especially the Barrett comparision.

### D. Use Of Expert To Prove Similar Performance

On Page 18 of its Opinion, the Court discounts Plaintiff's evidence of comparable performance with other teachers because it is not supported by expert testimony. The Court cites the following language from King v. Rumsfeld, 328 F.3rd 145, 149 (4th Cir, 2003) in support of its position.

> "To prove that he was similarly situated to his colleagues in terms of his job performance would, in the absence of evidence to that effect from the employer or its job performance reviews, require an expert to form an opinion based on reasoned analysis as to how [plaintiff] and the other teachers were performing and as to how their performances measured against one another. Such is not the stuff of lay, fact testimony."

As set forth in Plaintiff's Surreply (at pages 8-9), the facts and circumstances of this case differ so significantly from King as to make its requirement that an expert be used inapplicable.

> "… these "observations" are not preserved for future critique and review. As such, of what value and significance would the use of an expert be? To what could he testify other than that the substantive things sought to be evaluated in the observation are legitimate and proper?" Similarly, co-worker testimony would be of little value. First, co-workers are never present when these observations are done. Consequently, even if a co-worker teacher

4

>were to testify regarding his or her knowledge of Plaintiff's performance, Defendant would still be free to contend that during his observations, Plaintiff was not satisfactory, notwithstanding good performance when observed by co-workers.

Hence, Plaintiff requests that the Court re-visit this issue on the basis that <u>King</u> is inapplicable.

### E. Evidence of Discriminatory Intent On the Part of Fountain or Lorton

On pages 19-20 of its Opinion, the Court states that "Nichols has proffered no direct or circumstantial evidence of discriminatory intent on the part of Fountain, Lorton, or any of his other evaluators. He provides no proof that they were dishonest or acted in bad faith in giving him poor evaluations." On the contrary, in his Opposition, Plaintiff set forth several instances wherein Lorton either played "fast and loose" with the Board's (or State's Rules), or simply ignored them when it came to Plaintiff.

   1. Downgrading Plaintiff's teaching certificate (in music) from first class to second class based upon observations made primarily out of his area of certification in blatant violation of both State of Maryland and Board's rules, regulations and past practices and policies.

   2. On December 14, 2001, Dr. Lorton told Mr. Nichols that "effective immediately", he was being suspended for three days without pay on the charge of insubordination". The suspension stemmed from Plaintiff's alleged refusal to meet with Ms. Fountain. Plaintiff responded to Dr. Lorton's letter by advising him that his actions were in violation of Section 6-202(a)(2) of the Annotated Code of Maryland which states that "Before removing an individual, the county board shall send the individual a copy of the charges against him and give him an opportunity within 10 days to request a hearing". Plaintiff's efforts to appeal the suspension were unfairly thwarted by Dr. Lorton when he delayed the payroll deduction past the ten (10) day period for filing an appeal to the Board. (See Pl. Exhs 1, 7(a) - 7(f).

5

      3.    The Board recklessly violated its own rules and State law when it <u>had already</u> <u>voted to accept Lorton's recommendation to terminate</u> <u>Plaintiff</u> and its ruling was reported in the Board's executive minutes of May 7, 2002. (Pl. Exh. 9). The Board then scheduled a hearing on August 1, 2002, to hear Plaintiff's appeal.

      4.    On April 24, 2003, in complete and total contravention of the August 1st agreement, Superintendent Lorton hand-delivered a letter to Plaintiff advising that based upon the ALJ's <u>recommendation</u>, he was immediately removing Plaintiff from the payroll. (Pl. Exh.13). Plaintiff was then for the third time during Lorton's tenure, abruptly removed from his workplace. This action was a clear and undisputed violation of the terms of the August 1, 2002 Agreement between the parties, which provided that Mr. Nichols would remain on the payroll unless and until the <u>State Board</u> made a final decision on the recommended firing. (Pl. Exh. 11). The State board did not make its decision until July 23, 2003. (Def. Exh. 7.).

### F.    Time Lapse Between Protected Activity and Retaliatory Act

On pages 20-22 of its Opinion, the Court analyzed the relationship between Plaintiff's protected activity and his claimed retaliation, and determined that "Sufficient time passed between Nichols' protected activity and his downgrade and termination to destroy any inference of a causal connection between the two" (at page 22).

The flaw in the Court's analyzes is that it appears to limit Plaintiff's protected activity to the one single act of filing his initial charge of discrimination in June, 1999. Plaintiff would submit, however, that his "protected activity" was ongoing at least until Judge Harvey issued his last ruling in the federal litigation (denial of sanctions) on December 15, 2000 (Pl. Exh. 2). Surely the Court would agree that as long as Plaintiff was pursuing his claim (either administratively or judicially), this was considered "protected activity" and he was entitled to Title VII protection.

6

Hence, instead of the several month period between the filing of the charge and the negative observation on January 5, 2001, the actual period was twenty-one (21) days.

Accordingly, Plaintiff respectfully requests the Court reconsider its determination that the retaliatory nexus was lost due to the passage of time.

### III.  **CONCLUSION**

Accordingly, based on the above or for whatever reason the Court deems just and proper, Plaintiff requests the Court's Order granting Defendant's Motion For Summary Judgment be rescinded and the motion be denied.

Respectfully Submitted,

_____s/s_____
Frederick P. Charleston, Esq.
2530 N. Charles Street, Ste. 201
Baltimore, Maryland 21218
(410) 662-0010

Attorney For Plaintiff

### **REQUEST FOR HEARING**

Plaintiff requests a hearing on this motion.

_____s/s_____
Frederick P. Charleston, Esq.

7

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 4th day of March, 2004, a copy of the foregoing Motion To Alter, Amend or Reconsider Judgment or Order was served via facsimile and mailed first class, postage prepaid, to Leslie Robert Stellman, Esq., and Steven B. Schwartzman, Esq. , Hodes, Ulman, Pressin & Katz, 901 Dulaney Valley Road, Towson, MD. 21204.

                                                        _____s/s_____
                                                        Frederick P. Charleston, Esq.